**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JIMMY LEVON UNDERWOOD,**

**Petitioner,**

**v.** **Civil Action No. 1:19cv127**
**(Judge Kleeh)**

**C. GOMEZ, Warden, FCI Morgantown,**

**Respondent.**

**REPORT AND RECOMMENDATION**

**I. Procedural Background**

On June 24, 2019, the *pro se* Petitioner, an inmate at FCI Morgantown in Morgantown, West Virginia, filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 challenging the denial of his early release via the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP"). On August 26, 2019, Petitioner satisfied the $5.00 filing fee. On October 8, 2019, Respondent was directed to show cause why the petition should not be granted. On November 15, 2019, Respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment with a memorandum in response, and a Motion to Seal, attaching certain documents. Because a declaration and attachments were included with the dispositive motion, the undersigned construed the same as a Motion for Summary Judgment and issued a Roseboro Notice on November 18, 2019. On July 6, 2020, Respondent's motion to seal was granted. To date, Petitioner has not responded to the Roseboro Notice.

Accordingly, the case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2.

## II. Factual Background[1]

Petitioner is serving a 72-month sentence following his conviction via a plea to Count One of a nine-count indictment in the United States District Court for the Eastern District of North Carolina for Conspiracy to Distribute and Possess with Intent to Distribute 100 Grams or more of Heroin, a violation of 21 U.S.C. §§ 846, 841(b)(1)(B) and 841(a)(1). Petitioner's current projected release date is March 31, 2022 via Good Conduct Time release.[2]

According to the Petitioner's Pre-Sentence Investigation Report ("PSR"), he possessed a firearm in connection with his drug activity and maintained a premise for the purpose of manufacturing or distributing a controlled substance. Thus, the United States Probation Officer ("USPO") assessed a two-level specific offense characteristic ("SOC") enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), for Petitioner's possession of a dangerous weapon during the commission of the 21 U.S.C. §§ 841, 846 offense. See PSR, ECF No. 19-1, at ¶¶ 11, 16, 62.

## III. Contentions of the Parties

### A. The Petition

Petitioner alleges that after beginning the RDAP program at FCI Morgantown, he was informed in a September 10, 2018 BP-A0942 analysis that he would not be eligible for early release upon completion of the program, because he had received the SOC enhancement for the possession of a dangerous weapon under USSG 2D1.1(b)(1). ECF No. 1-1 at 2. Petitioner contends that he was denied consideration for early release under 18 U.S.C. § 3621(e)(2)(B) because the

[1] Unless otherwise noted, the information in this section is taken from Underwood's criminal docket available on PACER and all ECF numbers are from that case. See United States v. Roberts, No. 7:17-CR-92-D-2. Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[2] See BOP inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited July 5, 2020).

BOP wrongfully used the sentencing enhancement for possession of a firearm as a "violent offense," as opposed to an actual conviction for possessing a firearm to preclude his eligibility for the same. ECF No. 1 at 5. Petitioner argues that the BOP exceeded its authority in doing so, because he was never convicted of a violent offense. Id. Relying on Downey v. Crabtree,[3] he argues that that inmates who are not actually convicted of firearm-possession offenses cannot be denied sentence reduction eligibility by virtue of a mere sentence enhancement for similar conduct.

Further, Petitioner argues, the First Step Act mandates that the BOP can no longer abuse its authority by ignoring congressional in considering sentence reductions under "§ 3621 Offense Review for prisoners who are merely enhanced for possession of a firearm as opposed to being convicted for a crime of violence[.]" ECF No. 1-1 at 4.

Petitioner admits that he did not exhaust his administrative remedies before filing suit because [t]he Bureau of Prisons will not change their position as to the application of the 3621 Offense Review Form, BP-10942." ECF No. 1 at 7 – 8.

As relief, Petitioner requests that the Court "enforce the intent of Congress" on the BOP regarding the application of 18 U.S.C. § 3621(e)(2)(B). Id. at 8. Further, he requests that this Court "grant all relief it deems appropriate" "once Petitioner completes the RDAP program [sic].] ECF No. 1-1 at 4.

**B. The Respondent's Motion**

Respondent asserts that the petition should be dismissed or summary judgment granted in its favor for the following reasons:

1) 18 U.S.C. § 3625 precludes judicial review under the Administrative Procedures Act ("APA") of the BOP's discretionary and individualized early release determinations;

2) The BOP properly concluded that Petitioner's conviction under 21 USC §§ 841 and 846 precluded early release eligibility, because it carried a sentencing enhancement for possessing a

[3] Downey v. Crabtree, 100 F.3d 662, 667 (9th Cir. 1996).

dangerous weapon;

3) Petitioner withdrew from participation in RDAP on July 31, 2019, after being denied 18 U.S.C. § 3621 (e) early release eligibility; and

4) Petitioner failed to exhaust his administrative remedies regarding the denial of early release, and thus, is precluded from filing this petition.

ECF No. 18-1 at 3 – 11.

## IV. Standard of Review

### A. Motion to Dismiss Fed.R.Civ.P. 12(b)(6)

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (applying the Twombly standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 555, upheld the dismissal of a Complaint where the plaintiffs did not "nudge[] their claims across the line from conceivable to plausible." Id. at 570. Although courts are to liberally

construe *pro se* pleadings, *pro se* pleadings are not exempt from "Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano, 521 F.3d at 304 n.5.

**B. Motion for Summary Judgment Fed.R.Civ.P.56**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at

248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## V. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to any federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524 (2002), and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Prisoners are required to exhaust their administrative remedies *prior to* the filing of their habeas petitions. McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (federal prisoners must exhaust their administrative proceedings prior to filing § 2241 petitions); United States v. Odiana, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing § 2241); United States v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241).

In Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court held that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full and proper* exhaustion." Woodford, 548 U.S. at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 02.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq*. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Exhaustion of administrative remedies as applied to habeas corpus cases is not a requirement imposed by statute. Rather, exhaustion prerequisites in habeas corpus actions arising under § 2241 are judicially imposed. See Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a § 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004). Because the exhaustion requirement is only judicially imposed in habeas proceedings, a court has discretion to waive the requirement in certain circumstances.

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

See LaRue v. Adams, 2006 WL 1674487 *8 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir. 1997) *cert. denied* 521 U.S. 1131 (1997).[5] A number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5 – 7. Although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions. See Larue at *8.

In this matter, the case has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. However, even if Petitioner were not required to exhaust administrative remedies before bringing this action, his claim is nonetheless without merit and should be denied.

**B. Petitioner's Eligibility for Early Release Under RDAP**

Pursuant to the Crime Control Act of 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In 1994, to encourage inmates to participate in such programs, Congress authorized the BOP to reduce by up to one year the

[5] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA, Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions, because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements. See also: Sewell v. Carter, (N.D. W.Va. ECF Nos. 20, 22)(1:13cv120); Hunter v. O'Brien, (N.D. W.Va. ECF Nos. 33, 37)(5:12cv101).

sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. See 18 U.S.C. § 3621(e)(2)(B);[6] Pelissero v. Thompson, 170 F.3d 442, 443-444 (4th Cir. 1999). Congress delegated to the BOP authority to administer its drug abuse programs [see 28 C.F.R. § 550.56], and gave the BOP the discretion to determine which prisoners may participate in RDAP and which prisoners are eligible for sentence reductions. Lopez v. Davis, 531 U.S. 230, 240 (2001).

Because § 3621(e) does not define "nonviolent offense" nor set forth criteria for eligibility for early release, the BOP is vested with discretionary authority to determine when an inmate's sentence may be reduced under the statute. Pursuant to this authority the BOP has promulgated regulations to implement the statute. The regulation set forth at 28 CFR 550.55, *et seq*. and in BOP Program Statement ("P.S.") 5162.05, Categorization of Offenses, have been upheld as a valid exercise of discretion under 18 U.S.C. § 3621 (e)(2)(B). See Lopez v. Davis, 531 U.S. at 240; Cunningham v. Scibana, 259 Fed 3d 303, 306 (4th Cir. 2011).

Title 28 C.F.R. Section 550.55 provides, in part, that prisoners whose current felony offense "involve the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)" or "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another" are ineligible for early release. 28 C.F.R. §550.55(b)(5)(ii) and (iii).

Although Petitioner's offenses are not crimes of violence in all cases as defined by BOP P.S. 5162.05, they are included in its Section 4: "Offenses that at the Director's Discretion Shall

[6] This section provides as follows:

The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

Preclude an Inmate's Receiving Certain Bureau Program Benefits." (Specifying early release as an example of an included benefit). Such offenses include felonies that (1) have an element, the actual, attempted, or threatened use of physical force against the person or property of another; (2) involve the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device); or (3) by its nature or conduct presents a serious potential risk of physical force against the person or property of another. See id. The criminal offenses listed in Section 4b (including Petitioner's 21 U.S.C. §§ 841 and 846 convictions) may or may not satisfy the standard, depending on whether the offense involved the use or threatened use of force, or risk of bodily injury as reflected in a SOC enhancement to the Total Offense Level. ECF No. 18-1 at 9, 10 – 11. In Section 4d of Program Statement 5162.05 (also 28 CFR § 550.55 (b)(6)), a conspiracy offense (21 U.S.C. § 846) prevents a prisoner from receiving certain benefits if the underlying offense would preclude receiving the benefits based on any other portions of Section 4. ECF No. 18-1 at 10.

Here, because of his participation in RDAP, Petitioner requested review of his eligibility for early release pursuant to 18 U.S.C. § 3621(e). On September 10, 2018, the Designation and Sentence Computation Center ("DSCC") found him ineligible for early release because his offenses of conviction were accompanied by a court-adopted SOC enhancement for possession of a dangerous weapon. ECF No. 18-3 at 11 – 12. Petitioner's USPO recommended a two-level increase for possessing a firearm during the commission of the drug offense. ECF No. 19-1, ¶ 62 at 16. In its Statement of Reasons ("SOR"), the sentencing court adopted the recommended PSR "without change," thereby affirming and adopting the recommended two-level SOC enhancement. Id. at 22. Therefore, the BOP exercised its discretionary authority to determine that the 21 U.S.C.

§§ 846, 841(b)(1)(B) and 841(a)(1) offenses and sentencing enhancement precluded Petitioner's early release.

Although Petitioner frames his challenge in the nature of a general attack on the enactment of regulations relied upon by the DSCC to deny him eligibility for discretionary release, to the extent they could be construed as a direct challenge to the individual decision made by the BOP in his case, such matters are expressly precluded from judicial review by the language of 18 U.S.C. § 3625. The decision to admit an inmate to RDAP (and the resulting possibility of an earned sentence reduction) is reserved to the discretion of the BOP under the language of 18 U.S.C. § 3629(e)(2)(B). Congress specifically excluded these subsections from judicial review under the APA by the express terms of § 3625 which provides in relevant part "the provisions of § 554 and § 555 and §§ 701-706, of Title V, United States Code, [the APA] do not apply to the making of any determination, decision, or order under this subchapter. 18 U.S.C. § 3625. As a result, the BOP's individual decision to deny Petitioner access to the discretionary sentence reduction is not reviewable by this Court under the Act. Savage v. Wilson, No. 2:13cv578, 2014 WL 1902709, at *5 (E.D. Va. May 8, 2014); Schlager v. Stewart, No. 5:11cv118, 2012 WL 589205, at *1 (N.D. WV Feb. 22, 2012).

However, §706(2)(A) of the APA states that a court will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Stated differently, "even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." Garcia v. Nagle, 660 Fed 2d 983, 988 (4th Cir. 1981). This analysis addresses first whether any cognizable claim has been presented and second whether an agency's

interpretation of a statute is contrary to well-settled law. See Webster v. Doe, 486 U.S. 592 (1988); Neal v. United States, 516 U.S. 284 (1996).

Accordingly, Petitioner has failed to show that the BOP exceeded its legal authority, acted unconstitutionally or failed to follow its own regulations when it determined him ineligible for early release via RDAP.

Moreover, as noted *supra*, the regulation relied upon by the BOP to deny Petitioner access to early release incentive is found in 28 CFR § 550.55, re-issued in 2009. As it pertains to Petitioner's claim, the rule declares certain inmates ineligible for early release, including those who have a current felony conviction for "an offense that involves the carrying, possession, or use of a firearm or other dangerous weapon," as well as an offense that, "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." 28 CFR § 550.55(b)(5)(ii)-(iii). Petitioner claims the rule is contrary to the statutory intent expressed in § 3621(e)(2)(B), which specified only those convicted of nonviolent offenses could be considered for early release. Because his offense of conviction would not bar him from early release, Petitioner appears to claim the BOP's regulation, which expands a group of offenders deemed ineligible, is invalid.

When issued in 2009, the rule was accompanied by the following statement of purpose:

> There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in Lopez v. Davis, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." 531 U.S. 230, 240 (2001). The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.
>
> Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the courts deemed appropriate to impose.

Whitaker v. Stansbury, No. 3:03cv662, 2009 WL 3762320, at 4 (E.D. Va. Nov. 9, 2009) (quoting 74 Fed. Reg. 1892-01, 1895, Jan. 14, 2009).

This rule and its explanatory statement clearly satisfied the BOP's obligation to provide a "rational connection between the facts found and the choice made." See Lopez, 531 US at 240. Public safety is clearly affected by the significant potential for violence resulting from armed offenders. As a result, neither promulgation of the rule, nor applying it to exclude Petitioner from the discretionary sentence reduction, violates the APA. Motor Vehicle Mfrs. Ass'n, 463 US at 433 (quoting Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962)).

Finally, the determination of early release eligibility is separate and apart from the determination of eligibility for RDAP participation. Successful completion of the RDAP does not compel the BOP to grant early release.[7] See Lopez, 531 U.S. at 239-41 (BOP has authority, but not duty, to alter conditions of confinement and to reduce the terms of imprisonment). The BOP may exclude inmates from early release either categorically or on a case-by-case basis. See id. at 244; see also Downey v. Crabtree, 100 F.3d at 670 (finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program.").

Therefore, Petitioner's reliance on Downey for the proposition that relief should be granted in his case because Congress never defined the term "convicted of a nonviolent offense" is of little assistance to him; as noted *supra*, Downey makes it clear that Congress intended to vest the BOP

[7] Of note, Petitioner apparently withdrew from participation in RDAP on July 31, 2019, before completing the program. See ECF No. 18-3 at 17 – 18. Therefore, even if the Court were to find merit in his argument regarding the allegedly wrongful consideration of his SOC in determining his eligibility for early release, Petitioner still could not be afforded the benefit of early release because he failed to complete the program.

with discretion concerning whether to grant a sentence reduction to inmates who successfully complete a drug treatment program. See Downey, 100 F.3d at 670.

Finally, Petitioner's reliance on the proposition that First Step Act mandates that the BOP no longer abuse its authority/ignore congressional intent by permitting sentence reductions under 18 U.S.C. § 3621 for prisoners who are "merely enhanced for possession of a firearm as opposed to being convicted for a crime of violence [ECF No. 1-1 at 4]" is misplaced. The First Step Act contains no recommendation to amend § 3621 to effectuate inmate early releases via the RDAP program; RDAP is outlined in 18 USC § 3621(e). The only part of 18 U.S.C. § 3621 amended by the First Step Act is 18 U.S.C. § 3621(h)(5), which states:

> (h) Implementation of Risk and Needs Assessment System.—
>
> (5) Recidivism reduction partnerships.—In order to expand evidence-based recidivism reduction programs and productive activities, the Attorney General shall develop policies for the warden of each prison of the Bureau of Prisons to enter into partnerships, subject to the availability of appropriations, with any of the following:
>
> (A) Nonprofit and other private organizations, including faith-based, art, and community-based organizations that will deliver recidivism reduction programming on a paid or volunteer basis.
>
> (B) Institutions of higher education (as defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)) that will deliver instruction on a paid or volunteer basis.
>
> (C) Private entities that will—
>
>> (i) deliver vocational training and certifications;
>>
>> (ii) provide equipment to facilitate vocational training or employment opportunities for prisoners;
>>
>> (iii) employ prisoners; or
>>
>> (iv) assist prisoners in prerelease custody or supervised release in finding employment.

(D) Industry-sponsored organizations that will deliver workforce development and training, on a paid or volunteer basis.

18 U.S.C. § 3621(h)(5).

The petition should be dismissed.

## VI. Recommendation

For the foregoing reasons, the undersigned concludes that there is no genuine issue of material fact and recommends that Respondent's Motion to Dismiss or in the Alternative, for Summary Judgment [ECF No. 18] be **GRANTED** and the petition [ECF No. 1] be **DISMISSED with prejudice**.

The Parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge. **Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which the objections are made. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12. A copy of such objections should also be submitted to the United States District Judge.

**Failure to timely file objections as set forth above will result in waiver of the right to *de novo* review by this Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Upon entry of this Report and Recommendation, the Clerk of Court is further **DIRECTED** to terminate the Magistrate Judge association with this case.

DATE: July 14, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE